UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS ALBERTO ASTUDILLO SEREY (A 220-071-678),

Petitioner,

v.

WARDEN,

Respondent.

No. 1:26-CV-02907-DC-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the reasons provided below, the undersigned finds that Petitioner's detention violates his procedural due process rights and recommends that the petition be granted and he be ordered released. The undersigned also recommends that Petitioner's request to stay transfer out of the United States (ECF No. 20) be denied.

**I. Factual and Procedural History**

Petitioner, a citizen of Chile, entered the United States without inspection on May 22, 2021. ECF No. 7 at 13-15. The same day, U.S. Customs and Border Protection (CBP) officers apprehended him and initially processed him for expedited removal. Id. After expressing a credible fear of persecution or torture, Petitioner was "transferred from expedited removal to full removal proceedings" and released from custody. Id. at 8.

On September 22, 2025, the Palm Beach County Sheriff arrested Petitioner, charging him with larceny and battery on a law enforcement officer. ECF No. 7 at 19-20. The District Attorney did not pursue the larceny charge. Id. at 28. Petitioner entered a guilty plea for a felony violation of Florida Statute § 784.07(2)(b), battery on a law enforcement officer. Id. at 40. On March 9, 2026, while Petitioner was at Palm Beach County Jail, Immigration and Customs Enforcement (ICE) officers took him into custody. ECF No. No. 7 at 25. Petitioner is currently detained at the California City Immigration Processing Center. He has applied for asylum, and removal proceedings remain pending.

Petitioner filed a petition for writ of habeas corpus and motion for a temporary restraining order (TRO) on April 17, 2026, arguing that his continued detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. ECF No. 1. District Judge Coggins ordered Respondent to address whether any factual or legal issues exist that would distinguish Petitioner's case from Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025) and other similar cases in which this court has found a due process violation where petitioners have been re-detained after a prior release. ECF No. 5. In reply, Respondent distinguished this case by asserting that Petitioner's 2025 arrest and 2026 conviction triggered the re-detention and render him subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(E) in addition to § 1225(b)(1)(A). ECF No. 7. Noting Petitioner's criminal conviction and lack of response to Respondent's assertion that he is subject to mandatory detention, Judge Coggins denied the motion for TRO and referred the matter to the undersigned. ECF No. 8.

After the appointment of counsel, Petitioner submitted an amended petition arguing that his detention under § 1226(c)(1)(E) is unlawful because he has not been convicted of any of the enumerated crimes, that the proper detention authority is § 1226(a), and that his continued detention without a bond hearing violates his Fifth Amendment due process rights. ECF No. 15. Petitioner also requested an order to stay transfer pending conclusion of habeas proceedings, which the undersigned recommended be denied, as jurisdiction would remain with this court regardless of any future transfers. ECF 16, 19. Petitioner has also requested an order prohibiting his transfer out of the United States (i.e., his deportation) pending adjudication of his habeas

petition. ECF No. 20.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to

immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-factor test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest, including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

**B. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The statutory mechanism for release from detention for an asylum applicant apprehended at the border is generally temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

The detention of a noncitizen pending removal proceedings is governed by 8 U.S.C § 1226. While 8 U.S.C § 1226(a) allows the Attorney General to either detain or release noncitizens while their removal proceedings are pending, § 1226(c) imposes mandatory detention on certain

noncitizens.

## III. Analysis

### A. Laken Riley Act not applicable

Respondent asserts that Petitioner's criminal history subjects him to mandatory detention pursuant to the Laken Riley Act (LRA), which amended 8 U.S.C. § 1226(c)(1) to include any noncitizen who is (1) inadmissible under 8 U.S.C. § 1182(a)(6)(A), (6)(C), or (7) and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). The parties do not dispute that Petitioner is inadmissible under § 1182(a)(6)(A)(i); they dispute whether Petitioner's arrest and conviction fall under § 1226(c)(1)(E)(ii).[1]

Respondent presents two possible bases for detention under the LRA. First, Respondents argue that § 1226(c)(1)(E)(ii) applies to Petitioner because of his September 2025 arrest for larceny. Petitioner counters that the larceny arrest does not fall under § 1226(c)(1)(E)(ii) because the District Attorney did not pursue the larceny charge. The plain language of the statute implies that § 1226(c)(1)(E)(ii) does not apply if the charges have been dismissed or were not pursued. The use of the present tense, "is arrested for," indicates that detention is mandatory only so long as the charges either remain pending or are resolved in a way that triggers one of the other clauses of the statute—through a conviction or admission of guilt. To read the statute otherwise would make the words "is convicted of" superfluous, as no defendant could proceed to a conviction

---

[1] Respondent argues that Petitioner should be required to exhaust administrative remedies by requesting a Matter of Joseph hearing before an immigration judge to challenge his detention under § 1226(c). Because Respondent also argues that petitioner is also subject to mandatory detention pursuant to § 1225(b)(1), exhaustion of administrative remedies would be futile and therefore, the Court waives prudential exhaustion. See Lopez Lopez v. Warden, No. 1:26-CV-03556-DAD-CKD (HC), 2026 WL 1346694, at *1 n.1 (E.D. Cal. May 14, 2026) (waiving exhaustion requirement as futile where the government argued that petitioner should be required to exhaust administrative remedies by requesting a Matter of Joseph hearing while maintaining that petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)). Additionally, Petitioner raises due process arguments which cannot be addressed through administrative agencies.

without first being charged. Moreover, applying the statute to those who were arrested for and/or charged with a crime—but not convicted of that crime upon conclusion of the criminal process—could lead to mandatory detention for noncitizens who have been acquitted. Allowing mandatory detention for noncitizens who were first accused but ultimately acquitted of crimes they never actually committed would raise dire due process concerns.[2] The undersigned therefore finds that, absent a conviction, a noncitizen may only be detained under § 1226(c)(1)(E)(ii) if they are charged with or have been arrested for a relevant criminal charge that remains pending. Petitioner is not currently under arrest for or charged with larceny. Nor has he admitted to committing or been convicted of larceny.

Respondent also argues that Petitioner's 2026 conviction under Florida Statute § 784.07(2)(b) falls under § 1226(c)(1)(E)(ii), claiming that "battery of a law enforcement officer" constitutes the essential elements of "assault of a law enforcement officer." For the purposes of 8 U.S.C § 1226(c)(1)(E), the term "assault of a law enforcement officer" has the meaning given in the jurisdiction in which the act occurred. 8 U.S.C § 1226(c)(2). Respondent suggests that the court need only perform a "plain reading of the convicted crime and the statute" to determine that Petitioner is subject to § 1226(c)(1)(E)(ii). ECF No. 7 at 9. A plain reading of the statute, though, shows that, while they are listed as part of the same statute, "assault" and "battery" are different crimes with different elements. The statute defines assault as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011. The statute defines battery as "actually or intentionally touch[ing] or strik[ing] another person against the will of the other or intentionally

[2] Several other courts both within and outside this district have made similar findings. See, e.g., N.M. v. Warden of the California City Correctional Center, No. 2:26-cv-01270-TLN-AC, 2026 WL 1846742 (E.D. Cal. June 26, 2026); Flores Martines v. Mattos, No. 2:26-cv-00606-ART-MDC, 2026 WL 1362529 (D. Nev. May 15, 2026); Santos Barahona v Jamison, No. 26-cv-1776-JMY, 2026 WL 1047056 (E.D. Pa. Apr. 17, 2026) Alcantara Guerrero v. Wesling, ---F.Supp.3d---, 2026 WL 931503 (D. Mass Apr. 6, 2026); E.C. v. Noem, No. 2:25-cv-01789-RFB-BN, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); M.V.F v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, (C.D. Cal. Dec. 19, 2025)

caus[ing] bodily harm to another person." Fla. Stat. § 784.03. See also Florida Standard Jury Instruction (Criminal) 8.10 and 8.11, listing separate elements a jury would have to find to convict under § 784.07(2)(a) (assault on a law enforcement officer) versus under § 784.07(2)(b) (battery on a law enforcement officer). Although battery and assault are listed within the same statute, the essential elements of assault—a threat to do violence, an ability to carry out the threat, and the creation of fear in the other person—are not covered by the battery statute. Moreover, this is a meaningful distinction as to the scope of each offense, because "under the terms of the [Florida] state statute [prohibiting battery on a law enforcement officer], the defendant's underlying conduct could have involved the intentional infliction of bodily harm to another, but it also could have involved *mere unwanted touching*." United States v. Joseph, 371 Fed.Appx. 70, 74 (11th Cir. 2010) (emphasis added); see also id. at 73 ("The Florida Supreme Court reasoned that the offense of battery, as defined under §§ 784.03 and 784.07, would not invariably involve violent conduct because an individual could commit the offense by simply tapping a police officer on the shoulder without his consent.").

Even if Petitioner's actions involved the essential elements of assault—which Respondent implies with the submission of the police report alleging that Petitioner became "verbally aggressive," struck the patrol car's window divider with his face, and spat at an officer through the window—Petitioner was not convicted of, nor did he admit to committing, acts which constitute the essential elements of *assault* on a law enforcement officer. Regardless of the underlying actions, Petitioner was charged with, admitted to, and was convicted for *battery*, which does not share assault's essential elements.

For these reasons, the undersigned finds that neither the larceny charge nor the battery conviction subjects Petitioner to mandatory detention pursuant to § 1226(c)(1)(E).

**B. Due Process**

In reviewing Petitioner's due process challenge, the Court turns first to the question of whether Petitioner has a protected liberty interest from detention after a prior release.[3]

---

[3] Respondent's alternate justification for Petitioner's detention without bond is that Petitioner is subject to mandatory detention pursuant to § 1225(b)(1)(B)(ii). Neither Respondent's filings nor

Noncitizens who were previously detained pursuant to § 1226(a) then released on their own recognizance have a recognized liberty interest in their continued release, entitling them to due process protections. See Singh v. Chestnut, No. 1:26-cv-01400-DC-CSK (HC), 2026 WL 498335 (E.D. Cal. Feb. 23, 2026); Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026); and Altin v. Chestnut, No. 1:26-cv-00792-DC-CSK, Doc. No. 8 (E.D. Cal. Feb. 5, 2026). Non-citizens paroled into the United States pursuant to § 1182(d)(5) also have a protected liberty interest. See e.g. Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3–5 (E.D. Cal. Dec. 9, 2025) ("Petitioner's release pursuant to § 1182(d)(5) necessarily required a determination that he posed neither 'a security risk nor a risk of absconding.' 8 C.F.R. § 212.5(b). Once released, a parolee acquires an interest in his or her continued liberty"); Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *5, 9 (E.D. Cal. Nov. 22, 2025) (determining that the petitioner was entitled to a post-deprivation bond hearing after he was initially released pursuant to § 1182(d)(5)(A) and later re-detained); Salazar v. Casey, No. 25-cv-02784-JLS-VET, 2025 WL 3063629, at *4, 6 (S.D. Cal. Nov. 3, 2025) (ordering the petitioner released from custody subject to the conditions of her preexisting parole under § 1182(d)(5)(A), and requiring notice and a hearing prior to her re-detention); Noori v. LaRose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *9–10, 14 (S.D. Cal. Oct. 1, 2025) (enjoining re-detention of the petitioner during the pendency of his removal proceedings without leave of the court, when the petitioner was previously released on humanitarian parole pursuant to § 1182(d)(5)(A)); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687, at *9–11, 14 (D. Nev. Nov. 3, 2025) (ordering the petitioner's immediate release following re-detention when he was initially released pursuant to § 1182(d)(5)(A)).

---

the record evidence articulates whether ICE released Petitioner via humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) or conditional parole pursuant to § 1226(a). The Court will consider Petitioner's as-applied due process challenge regardless of whether §1225(b)(1)(B)(ii) or §1226(a) governs his detention.

Whether initially paroled or released on his own recognizance, Petitioner acquired a protected liberty interest. The Court then applies the Mathews v. Eldridge, 424 U.S. 319 (1976), framework to determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. Judge Coggins has found that where ICE asserts a non-pretextual basis to re-detain a noncitizen previously released into the United States, the proper remedy is a post-deprivation bond hearing. See, e.g., Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627 (E.D. Cal. Jan. 31, 2026). As explained below, however, the undersigned respectively finds that in the circumstances of this case, a pre-deprivation hearing is required to ensure that Petitioner's detention comports with due process. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (noting that generally "the root requirement" of due process is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest).

**1. Private interest**

Turning to the first Mathews factor, Petitioner has a strong liberty interest in avoiding detention after having been previously released. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner lived freely in the United States for nearly five years prior to his re-detention. During that time, Petitioner applied for asylum, a necessary preliminary step in seeking long-term security in the United States. Petitioner's time in the United States and application for asylum support his private liberty interest. See Salazar, 2025 WL 3063629, at *4 ("Petitioner has an interest in remaining with her family, seeking counseling, and attending hearings to seek a visa."); Noori, 2025 WL 2800149, at *10 ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States."). For these reasons, the first Mathews factor tilts in favor of Petitioner.

**2. Risk of erroneous deprivation and value of additional safeguards**

Second, the risk of erroneous deprivation is high when, as here, a noncitizen is detained without a pre-deprivation hearing to determine whether they pose a flight risk or danger to the community. "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is

justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G., 2025 WL 3254999, at *7 (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). If Petitioner was paroled under § 1182(d)(5)(A), the release necessarily required a determination that he posed neither a danger to public safety nor a flight risk. 8 C.F.R. § 212.5(b); Noori, 2025 WL 2800149, at *3. Re-detention without a pre-deprivation hearing risks erroneous deprivation of liberty "because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). If Petitioner was conditionally paroled under § 1226(a)(2)(b), a hearing would ensure that re-detention after a prior release is lawful, as it would allow a neutral adjudicator to determine whether changed circumstances, such as Petitioner's conviction, now render Petitioner a danger or flight risk and therefore justify re-detention. See Pinchi, 792 F. Supp. 3d at 1035.

The risk of erroneous deprivation and value of a pre-deprivation safeguard is particularly high where the information in the record does not show that Petitioner engaged in a pattern of unlawful conduct. Here, the police report shows that Petitioner apparently engaged in aggressive conduct while being arrested on suspicion of shoplifting during the checkout process—becoming "verbally aggressive," striking the patrol car's window divider with his face, and spitting at an officer through the window (striking the officer's forearm with the saliva). ECF No. 17 at 4. Petitioner was convicted and punished for that conduct by state authorities. While reprehensible, Petitioner's conduct does not suggest that an IJ would necessarily find Petitioner to pose a danger to the community such that he should not be released pending civil immigration proceedings. By contrast, a non-citizen's lengthy and unmitigated criminal record, which might suggest an IJ finding of danger to be all-but inevitable, could diminish the value of a pre-deprivation hearing. This factor under Mathews thus also favors Petitioner.

**3. Government's interest**

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. "[T]he government has a strong interest in effecting

removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Id. (citation and quotation omitted). Thus, "[p]roviding a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the [non-citizen] represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-CV-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)); see also Velasco-Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020). Therefore, the government's interest in detaining Petitioner without adequate reasoning and a pre-detention hearing is low. If Respondents seek to re-detain Petitioner, they need only provide him with written notice and a hearing before a neutral adjudicator. See Pinchi, 792 F. Supp. 3d at 1036 ("Indeed, it is likely that the cost to the government of detaining [Petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing."). A pre-detention bond hearing would involve a minimal fiscal and administrative burden.

Moreover, Respondent has not suggested any exigency that would make a pre-deprivation hearing impracticable. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" Cleveland Bd. of Educ., 470 U.S. at 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see also Zinermon, 494 U.S. at 127 ("Applying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty"). Courts typically require evidence of urgent concerns or an especially strong government interest to dispense with the default requirement of a pre-deprivation hearing. See Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025). Here, there is no such concern—such as immediate danger to the community or an identifiable person or risk of immediate flight—that shows only a post-deprivation hearing would protect the government's interests. See O.A.C.S. v. Wofford, No. 1:25-cv-1652 DAD CSK (HC), 2025 WL 3485221, at *4 (E.D. Cal. Dec. 4, 2025) (finding post-deprivation remedies sufficient

process in cases with particularized flight risks that "urgently require arrest" and where a pre-deprivation hearing "would have been impracticable and/or would have motivated [the petitioner's] flight") (quoting Martinez Hernandez v. Andrews, No. 1:25-cv-1035 JLT HBK, 2025 WL 2495767, at *11–12 (E.D. Cal. Aug. 28, 2025)). This factor therefore also weighs in favor of Petitioner.

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in detention without prior notice and a hearing concerning his flight risk or danger to the community. The undersigned thus finds that Petitioner's detention violates his Fifth Amendment due process rights.

## IV. Request to Stay Deportation

Petitioner also filed a request to stay his transfer out of the United States (ECF No. 20)—i.e., a request to stay his deportation. However, it is not clear that Petitioner is subject to an order of removal of any kind, let alone an executable order of removal. Accordingly, this request appears unripe. Moreover, Petitioner does not explain how the Court has jurisdiction to issue such an order, where Petitioner's habeas petition does not challenge his prospective removal and where Petitioner has not shown that ordinary administrative and judicial channels of review are unavailable. See 8 U.S.C. §§ 1252(a)(5); (g). This request should be denied.

## V. Conclusion

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for a writ of habeas corpus be GRANTED;
2. Respondent be ORDERED to immediately RELEASE Petitioner from custody with the same conditions to which Petitioner was subject prior to his detention in March 2026;
    a. At the time of release, Respondent be ordered return all of Petitioner's property and documents;
    b. The Clerk of Court be directed to serve a copy of any release order to California City Immigration Processing Center;

3. Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner for any purpose, absent exigent circumstances, without providing Petitioner at least 7 days' written notice and a pre-detention hearing before a neutral adjudicator where Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or flight risk;
4. The order not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal; and
5. Petitioner's request to stat transfer out of the United States (ECF No. 20) be DENIED as moot.
6. The Clerk of Court be directed to enter judgment and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 17, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE